OPINION
{¶ 1} Appellant, Lauren A. Schroeder, appeals from a judgment of the Franklin County Court of Common Pleas, which affirmed an order of appellee, the Ohio State Board of Registration for Professional Engineers and Surveyors ("Board"), finding appellant violated R.C. 4733.22 by engaging in the practice of engineering without being registered as a professional engineer with the Board.
 {¶ 2} Appellant holds a Ph.D. in biology and is a retired biology professor from Youngstown State University. In 2001, appellant prepared a position paper on behalf of the Mahoning River Consortium ("MRC"), a non-profit organization dedicated to environmental causes in the Mahoning River Valley area. In his three-page essay, entitled "North Road Improvement Project: Potential Environmental Impact on Mosquito Creek and Associated Wetlands," appellant addressed the environmental impact a proposed road construction project would have on the area, focusing upon, among other things, how the new road could impact storm water run-off in the area. To prepare the paper, appellant visited the site, interviewed various individuals connected with the project, reviewed pertinent documents, drawings and blueprints, and performed mathematical calculations. Although appellant did not attend a public hearing held by the Trumbull County Engineer's office addressing the proposed road improvement, the MRC provided the paper to the engineer's office. Upon reading the paper, Randall L. Smith, a deputy engineer for the county, informed the Board it was the opinion of the engineer's office that appellant was practicing engineering without proper credentials.
 {¶ 3} In May 2002, the Board sent appellant a letter warning him that his preparation of the paper may constitute the practice of engineering, and appellant responded with a letter in which he disagreed with the Board's position. The Board referred the matter to its hearing examiner who held a hearing in the presence of the Board in January 2003. In his Report and Recommendation, filed in March 2003, the hearing examiner stated:
The State has asserted in a letter to Dr. Schroeder that he has engaged in some practices that may constitute the practice of engineering in violation of R.C. 4733.01, et seq. Dr. Schroeder requested a hearing after the State informed him that he had a right to a hearing because he objected to the Board's "decision" that the MRC report constituted the practice of engineering without a license. The State has not, however, brought any charges against Dr. Schroeder. * * * Accordingly, the hearing officer finds that without there being any charges against Dr. Schroeder, there is no finding of a violation to be made.
If, however, the Board believes that Dr. Schroeder is in fact engaging in the unauthorized practice of engineering, the Board has the authority to apply for relief by injunction or restraining order. * * *
* * *
Based on the foregoing, it is this hearing officer's recommendation that the matter be dismissed and that the Board consider invoking its authority under R.C. 4733.23 if it believes that Dr. Schroeder is currently violating R.C. 4733.01, et seq.
 {¶ 4} Addressing this report and recommendation, the Board's final order stated:
* * * The Board hereby finds that the Conclusions of Law are insufficient in that the Board finds that Respondent performed acts that minimally fall within the practice of engineering, which include but are not limited to issues dealing with drainage, storm water discharges, storm water flows and the effects of same, but the Board concludes the acts do not rise to the level that warrant further action by the Board.
 {¶ 5} Appellant disagreed with the Board's conclusion that his actions in preparing the essay minimally fell within the statutory definition of the practice of engineering. In June 2003, appellant filed an administrative appeal in the trial court pursuant to R.C. 119.12. That court reviewed the evidence before the Board and concluded that the Board had before it reliable, probative, and substantial evidence supporting its conclusion that appellant had engaged in the practice of engineering. The court stated, in part:
* * * For this Court to second-guess the expertise of the Board members and Randy Smith, the only [other] professional engineer to testify at the hearing, would violate the well-recognized standard of due deference that must be allowed to the Board in its interpretation of the technical requirements of the field of engineering. * * *
 {¶ 6} Thus, the court affirmed the order of the board.
 {¶ 7} Appellant, pro se, now assigns the following as error:
Error I. Denial of procedural due process. The Court of Common Pleas fails to recognize the unfair procedures followed by the Board and consequently fails to rule on the issue.
Error II. Denial of freedom of speech. The Common Pleas Court addresses the issue of freedom of speech.
Error III. Evidence is not probative. The Common [Pleas] Court erred in ruling the evidence submitted by the Board was probative.
Error IV. Board is not entitled to "due deference." The Common Pleas Court erred by giving considerable weight to "due deference" of the expertise of the Board for which, in this case, the Board is not entitled.
Error V. Inadequate weighting of affidavit hearsay evidence.
The Common Pleas Court erred by upholding the administrative hearing officer's ruling that the hearsay evidence offered in the administrative procedure was either rejected or assigned reduced weight.
 {¶ 8} Appellant, through his counsel, has also filed a reply brief, which reiterated and/or rephrased many of these arguments, as follows:
I. THE BOARD'S DEFINITION OF "ENGINEERING" IS ERRONEOUS AS A MATTER OF LAW AND NOT ENTITLED TO DEFERENCE.
II. THE BOARD HEARD EVIDENCE NECESSARY TO REACH ITS CONCLUSION BUT NOT EVIDENCE SUFFICIENT TO DO SO.
III. THE BOARD ERRONEOUSLY EXCLUDED EVIDENCE SUBMITTED BY DR. SCHROEDER.
IV. THE BOARD'S SANCTIONS IMPERMISSIBLY CHILL FREE SPEECH.
V. THE BOARD VIOLATED DUE PROCESS BY IGNORING ITS OWN PROCEDURES.
 {¶ 9} Appellant's fourth assignment of error and his counsel's first assignment of error are related and will be addressed together. By these assignments of error, appellant argues that the Board misread pertinent statutes in order to reach its conclusion that appellant had engaged in the practice of engineering, so that the trial court was not required to give due deference to the Board's conclusion.
 {¶ 10} In an administrative appeal, the trial court reviews an agency's order to determine whether the order is supported by reliable, probative, and substantial evidence, and our analysis on appeal focuses upon whether the trial court abused its discretion in rendering a decision that lacks a reasonable basis and is clearly wrong. See, e.g., Angelkovski v. Buckeye PotatoChips Co. (1983), 11 Ohio App.3d 159. However, on issues of law our review is de novo. Univ. Hosp., Univ. of Cincinnati Collegeof Medicine v. State Emp. Relations Bd. (1992),63 Ohio St.3d 339, paragraph one of the syllabus. In a de novo review, this court independently reviews the record without giving deference to the trial court's decision. See Brown v. Scioto Cty. Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711.
 {¶ 11} The trial court in this case simply adhered to the requirement that it give due deference to the administrative resolution of evidentiary conflicts. See, e.g., Univ. ofCincinnati v. Conrad (1980), 63 Ohio St.2d 108. Thus, the court concluded that, because appellant failed to present expert testimony on the issue of whether his acts constituted the practice of engineering, and because the Board, as a body of professional engineers, was qualified to interpret the technical requirements of the field of engineering, the Board's conclusion that appellant's acts constituted the practice of engineering should be affirmed.
 {¶ 12} We agree that a trial court ordinarily should defer to an administrative agency's interpretation of a statute it must administer. Id. To be afforded that deference, however, the agency's interpretation must be reasonable and consistent with the underlying legislative intent. See, e.g., Delahoussaye v.Ohio State Racing Comm., Franklin App. No. 03AP-954, 2004-Ohio-3388, at ¶ 11-14; Glassco v. Ohio Dept. of Job Family Serv., Franklin App. No. 03AP-871, 2004-Ohio-2168, at ¶ 11.
 {¶ 13} Here, we address whether appellant's acts fell within the purview of R.C. 4733.01(D). That section, as it read in 2001 and 2002, defines the "practice of engineering" as providing:
* * * [A]ny professional service, such as consultation, investigation, evaluation, planning, design, or inspection of construction or operation, for the purpose of assuring compliance with drawings or specifications in connection with any public or privately owned public utilities, structures, buildings, machines, equipment, processes, works, or projects in the properrendering of which the qualifications of section 4733.11 of theRevised Code are required to protect the public welfare or tosafeguard life, health, or property.
(Emphasis added.)
 {¶ 14} In interpreting R.C. 4733.02, a related statute governing the practice of surveying through this very board, the Eighth District Court of Appeals has held that a title insurance company does not engage in the unauthorized practice of surveying where it undertakes surveying activities, such as measuring and recording land boundaries, so long as those activities are for its own benefit in determining whether to sell title insurance.Dempsey v. Chicago Title Ins. Co. (1985), 20 Ohio App.3d 90,93-94. That court noted, however, "to the extent that the defendant regularly undertakes those activities for others and charges for those services, it practices the profession of surveying."
 {¶ 15} As to those services, the court stated:
The defendant argues that its services are less elaborate, less precise, and consequently less costly than a traditional surveyor's services. While that may be true, the legislature requires that anyone who regularly performs this type of service for others must have specified training and experience. To ensure the quality of those services, the legislature mandates that a duly established administrative agency must examine and register such persons. Presumably, the legislature perceives a need to protect the public from less qualified persons who might undertake those restricted activities. * * *
 {¶ 16} We find this analysis — and its distinction between incidental activities on the one hand, and services on the other — persuasive because it focuses upon the purpose for which an individual engages in the target activity. The primary goal of R.C. 4733.01, like that of R.C. 4733.02, is to prevent persons lacking proper qualifications from performing tasks that might expose the public to safety, health, or property risks, if performed incompetently or unprofessionally. See Ohio Soc. ofProfessional Engineers v. Hulslander (1949), 86 Ohio App. 497,500-501. R.C. 4733.01 reflects this intent, as it defines the practice of engineering as "any professional service, * * * the proper rendering of which the qualifications of" a professional engineer "are required to protect the public welfare or to safeguard life, health, or property."
 {¶ 17} The question then becomes whether appellant, in submitting an opinion essay on the environmental impact of the proposed road improvement project, was providing a professional service, the proper rendering of which required engineering qualifications in order to protect the public.
 {¶ 18} First, there was no evidence that appellant received payment for his services, nor that he needed to be an expert on storm water drainage, ecology, road construction, or any other topic in order to voice his opinion in a public forum. Appellant's expertise in the field of biology may have meant that his opinion carried more weight with MRC and, perhaps, with the Trumbull County Engineer's office, but anyone with an interest in the road project could appear at the hearing and/or submit evidence to the county engineer. The ability of the private citizen to contribute to public debate on issues such as public works projects is well-established in both tradition and law, and, in fact, is a cornerstone of our democratic system of government. In this context, appellant was not providing a professional service, but simply expressing his opinion.
 {¶ 19} More to the point, however, appellant did not perform calculations or other tasks, the proper rendering of which required an engineer's qualifications in order to protect the public. Appellant was not in a position of public trust, nor was he hired or otherwise retained by any governmental entity for the purpose of giving an engineering, scientific, legal, or any other professional opinion. Appellant prepared his essay as a concerned private citizen, and Trumbull County officials could question and research the validity of his data, and accept or reject his recommendations, as they chose. Appellant never held responsibility for deciding whether and how to build the road. Rather, that responsibility rested with the county engineer, other county officials, and whatever contractors they hired. If Trumbull County made decisions solely based upon data contained in appellant's essay, any risk to the public would not flow from appellant, but from the county's failure to consult its own certified engineering expert to ascertain the accuracy of the data before using it. Simply put, appellant was never in a position of public trust, and no reasonable interpretation of R.C. 4733.01 could support a finding that he was practicing engineering as defined by the statute.
 {¶ 20} Based upon these considerations, we find the trial court erred by affirming the order of the Board because the Board misapplied R.C. 4733.01 to appellant's actions. Thus, we sustain appellant's fourth and his counsel's first assignments of error.
 {¶ 21} Appellant's third and fifth and his counsel's second and third assignments of error charge that the trial court erred in affirming the Board where the Board relied upon insufficient evidence and improperly excluded evidence proffered by appellant. Based upon our holding that the statute was misapplied to these facts, we need not reach these issues, therefore, appellant's third and fifth, and his counsel's second and third assignments of error are moot.
 {¶ 22} Adhering to our well-settled practice of avoiding addressing constitutional issues where a case can be resolved upon other grounds, we also find moot appellant's first and second and his counsel's fourth and fifth assignments of error, which challenge the trial court's decision on First Amendment and Due Process grounds. See Kinsey v. Bd. of Trustees of Police Firemen's Disability Pension Fund of Ohio (1990),49 Ohio St.3d 224; In re Miller (1992), 63 Ohio St.3d 99, 110;Greenhills Home Owners Corp. v. Village of Greenhills (1966),5 Ohio St.2d 207, paragraph one of the syllabus.
 {¶ 23} For the foregoing reasons, appellant's first, second, third, and fifth, and counsel's second, third, fourth, and fifth assignments of error are rendered moot. Appellant's fourth and counsel's first assignments of error are sustained, and the judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to that court with instructions to enter judgment in favor of appellant.
Judgment reversed and cause remanded with instructions.
Petree and Deshler, JJ., concur.
Deshler, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.