[Cite as *Moore v. State Med. Bd. of Ohio*, 2019-Ohio-4330.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| John Pease Moore, III, M.D., | : | |
| Appellant-Appellant, | : | |
| | | No. 18AP-644 |
| v. | : | (C.P.C. No. 16CV-10523) |
| State Medical Board of Ohio, | : | (REGULAR CALENDAR) |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on October 22, 2019

**On brief:** *George A. Katchmer,* for appellant. **Argued:** *George A. Katchmer.*

**On brief:** *Dave Yost,* Attorney General, and *Kyle C. Wilcox,* for appellee. **Argued:** *Kyle C. Wilcox.*

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} The state medical board does not and is not designed to provide a venue in which a doctor may relitigate the merits of criminal offenses to which he has pleaded guilty in a court of law. Indeed, for purposes of a medical board licensure hearing, guilty pleas and judicial findings of guilt are "conclusive proof of all the elements" of crimes committed by the doctor. Ohio Administrative Code 4731-13-24.

{¶ 2} So when John Pease Moore, III, M.D., tells us with regard to state crimes (committed years after a federal felony to which he also had pleaded guilty) that because "he pled to only seven fourth and fifth degree felonies," Appellant's Brief at 18, and because he thereby escaped "overwhelmingly more draconian charges," *id.* at 15, the medical board in considering whether license revocation was the appropriate board sanction should have

evaluated "the factors leading to his plea," *id.*, and "the decision to plead," *id.* at 18, we are not persuaded.

{¶ 3}   Dr. Moore, III's argument that he should have been permitted during board licensure proceedings to call additional witnesses or offer additional document passages in an attempt to look behind his plea calculations and call into question the validity of the charges of which he was convicted is made no more forceful by his general failure to identify for us *which* witnesses or passages he means, *what* they would have said, or *how* they would have affected the outcome of the licensure determination.  *See id.* at 1-19 (providing only one witness name, that of medical board investigator Michael Staples from whose words Dr. Moore proposed to show that "improper investigative techniques were used against him" in the (second) criminal case, *see id.* at 8, with hearing transcript citations limited exclusively to that matter, and giving not one reference to any specific evidentiary document); *but see id.* at 14 (making lone citation to administrative hearing officer's Report and Recommendation, specifying that Dr. Moore was permitted by contrast "to develop a full record explaining his conduct and reasons for acting as he did based on what was apparent to him at the time" of the offenses).

{¶ 4}   The decision of the common pleas court affirming as supported by reliable, probative, and substantial evidence and in accordance with law the unanimous order of the medical board that permanently revokes Dr. Moore's certificate to practice medicine and surgery in the State of Ohio admirably recites the facts of this case and explores the doctor's generally unsuccessful efforts at the administrative hearing to adduce evidence related to perceived flaws in the criminal case investigation (and trenching sometimes on what the hearing examiner found to be privileged investigatory material).  August 27, 2018 Decision and Judgment Entry Affirming the October 19, 2016 Order of the State Medical Board of Ohio.

{¶ 5}   Among other matters, the record reflects that Dr. Moore first pleaded guilty to a felony in 2000, when he admitted to making False Statements Relating to Health Care Matters (involving "upcoding" on medical bills and misstatements to evade insurance limitations on chiropractic procedures) in violation of 18 U.S.C. 1035.  He got a break: after the United States District Court for the Southern District of Ohio sentenced him to probation, the medical board stayed revocation of his license and suspended him from

practice for two years (a suspension ultimately served during 2007-2009, followed by a probationary period that ended in 2012).

{¶ 6} Dr. Moore then developed a medical practice that included addiction treatment and pain management, administered from three offices. By 2016, he was back in court as a criminal defendant. He pleaded guilty to Medicaid fraud as a fifth-degree felony, two counts of trafficking in drugs as fourth-degree felonies (Ambien and Suboxone), two counts of trafficking in drugs as fifth-degree felonies (Ambien and Diazapam), and fifth-degree felonies of theft and permitting drug abuse. The Greene County Common Pleas Court convicted him of those offenses, sentenced him to 20 months imprisonment, and ordered forfeiture of close to $80,000.

{¶ 7} Upon being granted early release from prison, he appeared with counsel at a medical board hearing he had requested to answer charges that he had been convicted of one or more felonies and had furnished drugs in violation of state law, each grounds for discipline up to licensure revocation pursuant to R.C. 4731.22(A) in light of 4731.22 (B)(9) and (B)(3), respectively. The Hearing Examiner's detailed 30-page November 4, 2016 Report and Recommendation summarizes with some care matters including: the evidence taken and excluded; Dr. Moore's position at that hearing; the hearing officer's view that "[e]vidence that is offered solely to negate or contradict an element of the offense to which Dr. Moore pled guilty is irrelevant because it is foreclosed by O.A.C. § 4731-13-24" and that "alleged wrongdoing by the State in investigating or prosecuting its case against Dr. Moore" also does not inform the "Board's decision as to the extent to which *Dr. Moore's* character and fitness merit his licensure as a physician, and what sanctions are merited by *Dr. Moore's* conduct"; the hearing officer's openness to hearing evidence offered by Dr. Moore "explaining *his* conduct or reasons for acting as he did, based on what was apparent to *him at the time*"; the hearing officer's assessment of various privilege claims; specific findings of fact and conclusions of law; an explanation for the hearing officer's lack of confidence that Dr. Moore "will not continue to commit criminal offenses in the course of his practice if permitted to do so"; and the recommendation that Dr. Moore's medical license be permanently revoked.

{¶ 8} Over Dr. Moore's objections, the medical board voted unanimously on October 19, 2016 to adopt its hearing examiner's report and recommendation and to revoke

permanently Dr. Moore's certificate to practice medicine and surgery in Ohio. Dr. Moore filed an administrative appeal with the Franklin County Common Pleas Court pursuant to Ohio Revised Code Chapter 119; the trial court's careful decision affirmed the medical board's determination under the appropriate standard.

{¶ 9} On appeal, Dr. Moore does not challenge the trial court's finding that "several of the [proposed] witnesses" had been "properly excluded by the Hearing Examiner" pursuant to the board's statutory investigatory privilege, R.C. 4731.22(F)(5), and to the common law qualified law enforcement investigatory privilege. August 27, 2018 Decision at 10-11. Nor does he mount any particularized challenge to the trial court's conclusion that "Dr. Moore's vague allegations of prejudice are insufficient to support his claim of a due process violation," *id.* at 10, or to its ruling that document passages that were neither admitted into the hearing record or specifically excluded were not properly before the board for its review, or were properly excluded as investigatory and privileged, *id.* at 12, and in any event were of no salience to the relevant issues, *id.* at 13-14. And he does not here dispute the trial court's determination that "[g]iven that Dr. Moore's main defense at the hearing was trying to attack the State's investigation that led to his guilty pleas, and that his testimony did not show that he had learned anything constructive from the Board's decision to give him another chance after [his earlier, federal conviction], the Hearing Examiner's finding that Dr. Moore expressed no remorse or regret for his conduct was supported by the hearing record." *Id.* at 15.

{¶ 10} Rather, in his two intertwined assignments of error, Dr. Moore does not directly address the trial court's determinations at all, but recites:

> [1.] The Appellant was denied due process of law under both the United States Constitution and under [sic] the Constitution of the State of Ohio at his administrative hearing and in the redaction of his objections to the hearing officer's report and recommendations.
>
> [2.] The hearing officer abused his discretion in his conduct of the disciplinary hearing and his arbitrary redaction of the objections to his report and recommendations.

Appellant's Brief at 9, 16. (Capitalizations adjusted.)

{¶ 11} Although neither assignment explicitly posits error by the reviewing common pleas court, and although Dr. Moore's discussion under each assignment does not cite to or

analyze any particular purported legal error by that court, or indeed refer to any passage from the court's decision at all, we interpret the assignments to contend that the common pleas court erred in affirming the result of the medical board process. Because the arguments made under the two assignments of error are not analytically distinct, we assess them together.

{¶ 12} "In an appeal from a medical board's order, a reviewing trial court is bound to uphold the order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law." *Pons v. Ohio State Medical Bd.*, 66 Ohio St.3d 619, 621 (1993), citing R.C. 119.12. (Citation omitted). "An appellate court's review is even more limited than the common pleas court['s]. The standard is whether the common pleas court abused its discretion in finding that the administrative order was or was not supported by reliable, probative and substantial evidence." *Gladieux v. Ohio State Med. Bd.*, 133 Ohio App.3d 465, 470 (10th Dist.1999). We review afresh the legal question of whether a particular sanction is authorized by law for the conduct as found. "Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the medical board or a trial court. Instead, the appellate court must affirm the trial court's judgment." *Pons*, 66 Ohio St.3d at 621 (citations omitted).

{¶ 13} Dr. Moore argues first that his medical board hearing was unfair (whether or not to the point of depriving him of his constitutional rights he doesn't say) because "he had to rush from his place of incarceration to the hearing site." Appellant's Brief at 13. Yet we find no indication in the record that he or his lawyer, who also was present at the hearing, even asked for a continuance of the hearing as a whole (as opposed to the allowance they unsuccessfully requested to obtain the testimony of an out-of-state potential witness, an undercover agent who Dr. Moore claimed had "deceived" him in acting the part of a patient, *see* hearing officer's Report and Recommendation at 25-26). Not surprisingly, then, we find no indication of prejudice. Also fundamentally, we find no indication that Dr. Moore raised this argument in his assignments of error to the common pleas court. *See, e.g.,* March 17, 2017 and April 21, 2017 Moore common pleas court briefs. Dr. Moore has waived any argument here. *See, e.g., Edmands v. State Med. Bd.*, 10th Dist. No. 14AP-778, 2015-Ohio-2658, ¶ 19 (arguments a party could have made at an administrative hearing but did not are waived); *LeFort v. Century 21-Maitland Realty Co.,* 32 Ohio St.3d 121, 123 (1987)

("an appellate court will not consider any error which a party * * * could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court").

{¶ 14} He then asserts without specification or particularity that "six of his witnesses were forbidden to testify, one of his exhibits was excluded and his objections were arbitrarily redacted by the hearing officer before going to the Board for consideration." Appellant's Brief at 13. He proceeds from that rather lean assertion to generalized complaints—which he does not analyze or elaborate in the context of any particular potential witness, document, or objection—that the hearing officer had "unnecessarily limited the scope of Appellant's mitigating evidence," *id.* at 14, that Dr. Moore was "denied a meaningful opportunity to be heard," *id.* at 15, that the hearing officer's exclusion of evidence was "both arbitrary and unreasonable," *id.* at 17, and that due process permits no restraints based on relevancy, *id.* at 17-18. He seeks to connect these claims by means of the repeated point that he had been charged with many more and much more serious crimes than those to which he actually pleaded guilty so as to avoid "overwhelmingly more draconian charges," Appellant's Brief at 15, and more specifically that he "was originally charged with 44 counts including first degree felonies, and second and third degree felonies * * * * [but] pled to only seven fourth and fifth degree felonies and was released from incarceration after only 63 days," *id.* at 18 (arguing further that "this history" should have made his "decision to plead" a significant area of inquiry for the medical board).

{¶ 15} Again, our review is somewhat hampered here because Dr. Moore provides no citations to the record on these matters (apart from the passing reference in his Statement of Facts, not renewed in the Argument section of his brief, to investigator Staples) and does not address directly any of the trial court's analysis. We have underscored before that parties "must present [their] contentions with respect to each assignment of error presented for review, in addition to the reasons in support of those contentions, with citations to the authorities, statutes, and parts of the record on which [they] rel[y]. It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error. Absent the foregoing, unsubstantiated assertions will not be considered on appeal." *Shumate v. Gahanna*, 10th Dist. No. 02AP-881, 2003-Ohio-1329, ¶ 6 (adding

that it is not the role of the court to "construct the legal arguments" for a party); *Catudal v. Catudal*, 10th Dist No. 14AP-749, 2015-Ohio-1559, ¶ 23 (quoting *Shumate*).

{¶ 16} But to the (apparently large) extent that Dr. Moore grounds his generalized argument on the view that "the factors leading to his plea" and his "decision to plead" were appropriate considerations in mitigation because had he not admitted to guilt on those counts he would have risked conviction on far worse charges, *see* Appellant's Brief at 15, 18, we do not agree that such a predicate converted the medical board proceedings into a proper forum for challenging the propriety of the convictions to which he assented. Dr. Moore provides no authority whatsoever for the proposition that Ohio's rule in this context that such pleas and adjudications of guilt are "conclusive proof of all the elements" of crimes committed by the doctor, Ohio Adm.Code 4731-13-24, somehow violates constitutional due process norms. It doesn't. *Compare, e.g., Bouquett v. State Med. Bd.*, 123 Ohio App.3d 466, 474-75 (10th Dist.1997) ("Where a physician is fully apprised of the violations being considered by the board and is given the full opportunity to respond before an impartial board, due process has been satisfied"). Neither do relevancy limitations on supposed mitigation evidence; Evid.R. 402, for example, which directs in court proceedings that "[e]vidence which is not relevant is not admissible," is routinely enforced as consistent with if not in aid of due process considerations. And we have upheld the board's imposition of far further constraints on supposed mitigation evidence. *See, e.g., In re Vaughn*, 10th Dist. No. 95APEO5-645, 1995 Ohio App. Lexis 5258, * 8, 10 ("when guilt has already been adjudged and only the issue of sanction remains before the board," board's denial of request to present additional evidence in mitigation "did not violate appellant's rights of due process under the Ohio and United States Constitutions"); *Khan v. State Med. Bd.*, 10th Dist. No. 14AP-772, 2015-Ohio-1242, ¶ 19 (citing *Vaughn*).

{¶ 17} Ohio's court system afforded Dr. Moore the appropriate processes for contesting the criminal charges against him, and the medical board did not need to offer an avenue for collateral attack on his convictions. *Compare, e.g., Temponeras v. Med. Bd.*, 10th Dist. No. 14AP-970, 2015-Ohio-3043, ¶ 12 (reaffirming that "proceedings before the board cannot be used as a means of conducting a collateral attack on [a] DEA decision to suspend appellant's certificate of registration," and finding at ¶ 13 that because there was reliable evidence that the DEA had revoked appellant's registration to prescribe drugs, the

board's revocation of medical license was in accordance with law); *Coniglio v. State Med. Bd.*, 10th Dist. No. 07AP-298, 2007-Ohio-5018, ¶ 10 (Ohio medical board "proceedings cannot be used as a means of conducting a collateral attack" on Nevada medical board decision).

{¶ 18} Further still, Dr. Moore was permitted at the board hearing to explain why he entered into the plea agreement. As the hearing officer recited, "[t]o the extent he offered any explanation for his guilty pleas, Dr. Moore testified that 'I saw it as the best way to resolve this situation at the time' or 'I thought it was the best way to resolve the mess of a situation at this time,' or 'I thought it was the best way to resolve this situation.' * * * * No evidence was presented by either party regarding the number of offenses with which Dr. Moore was charged or the cumulative penalties he faced, or any other circumstances that might have shed light on his decision to plead guilty to the offenses in question." Hearing officer's Report and Recommendation at 10-11 and fn. 16 (transcript citations omitted).

{¶ 19} Moreover, Dr. Moore has not shown us that he was prejudiced in any way by unspecified restraints on delving into the concept that he could have been convicted of offenses even worse than those to which he pleaded and on which the board based his license revocation. As the trial court noted, and as Dr. Moore does not contest, " '[t]o demonstrate a reversible denial of due process, as with any alleged error on appeal, an appellant typically must make a showing of identifiable prejudice.' " August 27, 2018 Decision at 10, quoting *In re C.W.*, 9th Dist. No. 06CA003-M, 2006-Ohio-5635, ¶ 9.

{¶ 20} With regard to Mr. Staples, the only proposed witness identified in Dr. Moore's brief to us, the hearing officer observed that if the putative point of the witness "was to show that the law enforcement investigation of Dr. Moore was 'so sloppily done' (Tr. at 54-55), or that Dr. Moore was somehow entrapped (Tr. at 58-59), in the opinion of a board investigator, such evidence could not rebut Dr. Moore's plea of guilty to the offense * * *." Report and Recommendation at 22 (adding that "Mr. Staples' proffered testimony shed no apparent light on the conduct of Dr. Moore, but was apparently intended only to shed light on the conduct of the State"). Dr. Moore offers us no counter to that assessment. Nor does he attempt any showing that the trial court somehow erred in holding (correctly) that "[e]vidence that is offered solely to negate or contradict an element of the offense to which Dr. Moore pled guilty is irrelevant because it is foreclosed by Ohio Adm.Code 4731-

13-24, which provides that guilty pleas and convictions are 'conclusive proof' of the elements of the crimes involved." August 27, 2018 Decision at 9 (continuing at page 10 to say, as we do, that Dr. Moore "had the opportunity to contest the criminal charges brought against him in the criminal case before entering pleas of guilty. He chose not to do so. Consequently, the record here does not demonstrate that the Hearing Examiner's exclusion of the testimony of Dr. Moore's proposed witnesses somehow deprive Dr. Moore of his right to procedural due process."). And he offers nothing to rebut the common pleas court's further observation that Dr. Moore had cited "no authority to support his argument that the Hearing Examiner acted in violation" of Ohio Adm.Code 4731-13-03(D)(3) through (4) and 4731-13-13(J), giving hearing officers discretion in ruling on the admissibility of evidence, the examination of witnesses, and the like.

{¶ 21} Dr. Moore's appeals brief does not discuss by name or individualized subject matter any potential witness other than Mr. Staples, and it does not challenge the common pleas court's holding that "several of the witnesses" were properly excluded "in significant part" due to properly invoked privileges. *See* August 27, 2018 Decision at 10-11. We agree with the common pleas court's conclusion. In any event, Dr. Moore had previously waived any argument on this score by having failed to offer arguments on privilege to the trial court. *See* August 27, 2018 Decision at 11.

{¶ 22} The trial court's decision further rehearses, with far greater specificity than does Dr. Moore's brief to us, matters regarding certain redactions to which Dr. Moore may mean to advert here but which he entirely fails to identify. *See id.* at 11-14. Suffice it to say that we discern no error, let alone any abuse of discretion, in the common pleas court's discussion of these matters.

{¶ 23} We overrule both of Dr. Moore's assignments of error.

{¶ 24} In the end, Dr. Moore's convictions by plea of seven felonies in 2016, including drug offenses, and even without regard to his earlier discipline for his federal felony from 2000, provided a legal basis for the medical board to revoke his license. R.C. 4731.22. "If the board's sanction is within its statutory authority, courts have no authority to reverse or modify it." *Vaughn*, 1995 Ohio App. Lexis at * 11 (multiple citations omitted); *see also, e.g., Coniglio*, 2007-Ohio-5018 at ¶ 12 ("Reliable, substantial and probative evidence demonstrates the adverse action of the Nevada Medical Board. Given that adverse

action, R.C. 4731.22(B)(22) authorized the State Medical Board of Ohio to take action against appellant. The [authorized] penalties assessed by the State Medical Board of Ohio cannot be reviewed by us, so are in accord under law."). The board was authorized by law permanently to revoke Dr. Moore's medical license, and the common pleas court had "no authority to modify a penalty that the agency was authorized to and did impose, on the ground that the agency abused its discretion." *Henry's Cafe, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233 (1959), paragraph three of the syllabus.

{¶ 25} We affirm the judgment of the Franklin County Court of Common Pleas upholding the October 19, 2016 Entry of Order of the State Medical Board of Ohio that permanently revoked John Pease Moore, III's certificate to practice medicine and surgery in the State of Ohio.

*Judgment affirmed.*

KLATT, P.J. and BROWN, J., concur.

————————————